# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BENJAMIN JAMES WILLIAMS,** **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-9753** |
| **BP EXPLORATION & PRODUCTION, INC., ET AL.,** **Defendants** | **SECTION "E" (5)** |

## ORDER AND REASONS

Before the Court is a Motion to Strike Diagnosing Physician's Expert Report and Trial Testimony for Failure to Comply with F.R.C.P. 26(a)(2)(B) and Rec. Doc. No. 35 (hereinafter, the "Motion to Strike"), filed by Defendants BP Exploration & Production Inc. and BP America Production Company.[1] Plaintiff Benjamin Williams opposes this motion.[2] Defendants filed a reply.[3]

Also before the Court is a Motion for Summary Judgment Based on Lack of Expert Medical Evidence of Diagnosis and Causation filed by Defendants.[4] Plaintiff opposes this motion.[5] Defendants filed a reply.[6]

For the reasons that follow, the Motion to Strike and the Motion for Summary Judgment are both **GRANTED**.

## BACKGROUND

This case arises from Plaintiff's alleged exposure to harmful substances and

---

[1] R. Doc. 47.
[2] R. Doc. 69.
[3] R. Doc. 71.
[4] R. Doc. 48.
[5] R. Doc. 68.
[6] R. Doc. 72.

chemicals after the Deepwater Horizon oil spill.[7] Plaintiff alleges that during the Deepwater Horizon incident, he was employed by Shamrock Management, LLC and Environmental Safety & Health Consulting Services, LLC to perform response activities.[8] During this work he allegedly was exposed to "oil, other hydrocarbons, and other substances released from the MC252 Well, Corexit EC9500, Corexit EC9527, and other dispersants and decontaminants."[9] According to Plaintiff, he was diagnosed on July 17, 2014 with chronic damage to conjunctiva, chronic rhinosinusitis, and chronic contact dermatitis at the site of contact.[10]

On October 19, 2018, Plaintiff filed this Back-End Litigation Option ("BELO") action against Defendants, pursuant to the terms of the Medical Benefits Class Action Settlement Agreement (the "MSA") in *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* (commonly referred to as "MDL 2179").[11,12] Plaintiff alleges his diagnosed medical conditions complained of herein were legally and proximately caused by his exposure to the substances and chemicals during his response activity efforts.[13]

On October 11, 2019, Plaintiff disclosed Dr. Scott A. Haydel as a treating, non-retained medical expert[14] and, as a result, did not produce an expert report authored by him.[15] Plaintiff's counsel did provide to Defendants a fill-in-the-blank diagnostic form

---

[7] R. Doc. 2 at ¶¶ 10-11.
[8] *Id.* at ¶ 10.
[9] *Id.* at ¶ 11.
[10] *Id.* at ¶ 12.
[11] R. Doc. 2.
[12] *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, No. 10-md-2179, R. Doc. 6427-1 (E.D. La. May 3, 2012).
[13] R. Doc. 2 at ¶ 13.
[14] R. Doc. 31-3 at 4.
[15] The Plaintiff's "Designation of Experts" attached to the Defendants' Motion *in Limine*, R. Doc. 31-3, was not filed in the record by the Plaintiff. Defendants represent Plaintiff's counsel provided this document to Defendants, stating: "On October 11, 2019, Plaintiff Benjamin James Williams designated Scott. A. Haydel,

created by counsel and signed by a nurse practitioner, Eva Hvingelby, on July 17, 2014 ("Hvingelby Form").[16] On October 29, 2019, Defendants filed a Motion *in Limine* to require Plaintiff to comply with Federal Rule of Civil Procedure 26(a)(2)(B) by providing a written report from Dr. Haydel.[17] Plaintiff did not oppose this motion. The Court granted Defendants' motion and ordered:

> Dr. Haydel must provide a report complying with Federal Rule of Civil Procedure 26(a)(2)(B) by no later than Monday, November 11, 2019. Failure to comply with this Order will result in Dr. Haydel's testimony as a retained expert being excluded at trial for failure to comply with Rule 26(a)(2)(B).[18]

On November 11, 2019, Plaintiff provided to Defendant Dr. Haydel's one paragraph expert report dated October 30, 2019 (the "Original Report").[19] Attached to the Original Report were the curriculum vitae of Dr. Haydel, a list representing Dr. Haydel has never given any prior expert testimony, and an invoice for the amount paid to Dr. Haydel to render the one paragraph expert report.[20]

On November 12, 2019, Defendants filed the instant Motion to Strike[21] and Motion for Summary Judgment.[22] Plaintiff failed to file any opposition to either motion by the deadline imposed by the Local Rules for the Eastern District of Louisiana.[23] During a telephone status conference held on November 25, 2019, Plaintiff's counsel made an oral request for leave of Court to file oppositions to Defendants' motions.[24] Plaintiff's counsel did not seek leave to file a revised expert report, likely because they knew the request

---

M.D., as a non-retained, treating expert. Dr. Haydel did not provide an expert report; instead, counsel submitted a copy of Dr. Haydel's self-titled 'examination record' from 2014." R. Doc. 47-2 at 1.

[16] R. Doc. 47-4; R. Doc. 47-2 at 1.
[17] R. Doc. 31.
[18] R. Doc. 35.
[19] R. Doc. 47-3 at 3.
[20] R. Doc. 47-3.
[21] R. Doc. 47.
[22] R. Doc. 48.
[23] L.R. 7.5.
[24] R. Doc. 64.

would be refused. The Court granted Plaintiff's request for leave to file oppositions to the motions.[25] On November 27, 2019, Plaintiff filed an opposition to the Motion to Strike.[26] Without leave to do so, Plaintiff attached to his opposition a revised report from Dr. Haydel, dated November 27, 2019 (the "Revised Report").[27] Plaintiff also filed an opposition to the Motion for Summary Judgment.[28]

## LAW AND ANALYSIS

### I. Law

#### A. Rule 26(a)(2)(B), Rule 37(c)(1), and Rule 16(b)

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(B), an expert report must contain the following:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>
> (vi) a statement of the compensation to be paid for the study and testimony in the case.[29]

"Under Rule 26(a), expert reports must explain the 'how' and 'why' of the expert's opinions with specificity."[30] Failure to abide by Rule 26(a)'s disclosure requirements

---

[25] *Id.*
[26] R. Doc. 69.
[27] R. Doc. 69-1.
[28] R. Doc. 68.
[29] Fed. R. Civ. P. 26(a)(2)(B).
[30] *Fulmer v. United States*, Civil Action No. 17-15943, 2019 WL 1989233, at *3 (E.D. La. May 6, 2019) (citing *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir. 1995) (report lacked specificity to

prompts sanctions under Federal Rule of Civil Procedure 37(c).[31]

Rule 37(c)(1) provides "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."[32] Additionally, "[t]he language of Rule 37(c)(1) gives the court broad discretion to fashion a remedy, as the court 'may impose other appropriate sanctions.'"[33]

A party violates Rule 26(a)(2)(B) by failing to timely disclose an expert report required under Rule 26(a)(2)(B)[34] or by disclosing an expert report that fails to contain all the components required by Rule 26(a)(2)(B).[35] In determining whether a violation of Rule 26 is harmless or substantially justified, a court considers: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose."[36]

Pursuant to Federal Rule of Civil Procedure 16(b), a court's scheduling order "may

give advance notice of substance of expert's testimony so was deficient under Rule 26(a)); *Denley, v. Hartford Ins. Co. of the Midwest*, 2008 WL 2951926, at *4-5 (E.D. La. July 29, 2008); *Reed v. Binder*, 165 F.R.D. 424, 430 (D.N.J. 1996) (reports referencing "few specific resources" among "massive amounts of documents" insufficient under Rule 26(a))).

[31] *Honey-Love v. United States*, 664 F. App'x 358, 361-62 (5th Cir. 2016).

[32] Fed. R. Civ. P. 37(c)(1).

[33] *Reed*, 165 F.R.D. at 431.

[34] *See, e.g., Seilham v. Commonwealth Land Title Ins. Co.*, 360 F. Supp .3d 412, 421-22 (E.D. La. 2018) (conducting Rule 37(c)(1) "harmless or substantially justified" analysis where party "failed to timely produce expert reports."); *Stokes v. Terrebonne Parish Sheriff's Office*, Civil Action No. 12–1241, 2013 WL 1948120, at *3 (E.D. La. May 9, 2013) ("A district court has the discretion to exclude expert testimony and evidence if a party does not produce expert reports within the appropriate deadlines." (citation omitted)).

[35] *See, e.g., Honey–Love*, 664 F. App'x. at 361 (affirming district court's exclusion of expert testimony on basis that expert report failed to provide the "basis or reasons" for reaching expert's opinions, as required by Rule 26(a)(2)(B)); *Fulmer*, 2019 WL 1989233 at *3 (conducting Rule 37(c)(1) "harmless or substantially justified" analysis where parties' expert report "wholly fail[ed] to identify the 'basis and reasons' for his opinions as to the standard of care, the breach of that standard, and causation as required by Rule 26(a).").

[36] *Texas A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003).

be modified only for good cause and with the judge's consent."[37] "The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'"[38] Courts consider four factors in determining whether the party seeking relief has met his burden: "'(1) the explanation for the failure to [timely move for leave]; (2) the importance of the [revised expert report]; (3) potential prejudice in allowing the [revised expert report]; and (4) the availability of a continuance to cure such prejudice.'"[39]

## B. Rule 702

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.[40]

The United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[41] provides the analytical framework for determining whether expert testimony is admissible under Rule 702. Under *Daubert*, courts, as "gatekeepers," are tasked with making a preliminary assessment of whether expert testimony is both relevant and reliable.[42] The party offering the expert opinion must show by a preponderance of the

---

[37] Fed. R. Civ. P. 16(b)(4).

[38] *S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 535 (5th Cir. 2003) (quoting 6A Charles Alan Wright et al., *Federal Practice and Procedure § 1522.1* (2d ed. 1990)).

[39] *Reliance Ins. Co. v. La. Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir. 1997) (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990)).

[40] Fed. R. Evid. 702.

[41] 509 U.S. 579 (1993).

[42] *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243–44 (citing *Daubert*, 509 U.S. at 592–93).

evidence that the expert's testimony is reliable and relevant.[43]

The reliability of expert testimony "is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid."[44] In Daubert, the Supreme Court enumerated several non-exclusive factors that courts may consider in evaluating the reliability of expert testimony.[45] "These factors are (1) whether the expert's theory can or has been tested, (2) whether the theory has been subject to peer review and publication, (3) the known or potential rate of error of a technique or theory when applied, (4) the existence and maintenance of standards and controls, and (5) the degree to which the technique or theory has been generally accepted in the scientific community."[46]

The Supreme Court has cautioned that the reliability analysis must remain flexible: the *Daubert* factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony."[47] Thus, "not every *Daubert* factor will be applicable in every situation . . . and a court has discretion to consider other factors it deems relevant."[48] The district court is offered broad latitude in making expert testimony determinations.[49]

As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight of the evidence rather than its admissibility and should be left for the finder of fact.[50] "Unless wholly unreliable, the data on which the expert relies goes to the

---

[43] *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).
[44] *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). *See also Burleson v. Texas Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584–85 (5th Cir. 2003).
[45] *Daubert*, 509 U.S. at 592–96.
[46] *Bocanegra*, 320 F.3d at 584–85 (citing *Daubert*, 509 U.S. at 593–94).
[47] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999).
[48] *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 326 (5th Cir. 2004).
[49] *See, e.g., Kumho Tire*, 526 U.S. at 151–53.
[50] *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).

weight and not the admissibility of the expert opinion."[51] Thus, "[v]igorous crossexamination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[52] The Court is not concerned with whether the opinion is correct but whether the preponderance of the evidence establishes that the opinion is reliable.[53] "It is the role of the adversarial system, not the court, to highlight weak evidence."[54]

## II. Motion to Strike

### A. The Revised Report is Stricken as Untimely

Pursuant to this Court's initial Scheduling Order entered on March 15, 2019, Plaintiff's deadline to produce expert reports to defense counsel was October 11, 2019.[55] On that date Plaintiff disclosed Dr. Haydel but characterized him as a treating, non-retained physician and did not produce an expert report authored by him. At Plaintiff's request, the Court extended Plaintiff's deadline to disclose Dr. Haydel's written expert report to November 11, 2019.[56] Plaintiff provided the Original Report to Defendants on November 11, 2019. Then, two and one-half weeks later, without leave of Court, Plaintiff filed the Revised Report on November 27, 2019.[57]

Plaintiff did not move to extend his expert disclosure deadline beyond November 11, 2019. Now, in effect, Plaintiff is requesting the deadline be extended to November 27,

---

[51] *Rosiere v. Wood Towing, LLC*, No. 07-1265, 2009 WL 982659, at *1 (E.D. La. Apr. 8, 2009) (citing *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996)) (emphasis added); *Wolfe v. McNeil-PPC, Inc.*, No. 07-348, 2011 WL 1673805, at *6 (E.D. Pa. May 4, 2011).
[52] *Pipitone*, 288 F.3d at 250 (quoting *Daubert*, 509 U.S. at 596) (internal quotation marks omitted).
[53] *See Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012).
[54] *Primrose*, 382 F.3d at 562.
[55] This deadline was set in the original Scheduling Order docketed on March 15, 2019. R. Doc. 11. This Scheduling Order was amended on August 30, 2019, September 26, 2019, and October 22, 2019, but the deadline for filing Plaintiff's expert report has not changed. R. Docs. 23, 24, and 30.
[56] R. Doc. 35.
[57] R. Doc. 69-1.

2019, when the Revised Report was provided. Rule 16(b) provides a "schedule may be modified only for good cause and with the judge's consent."[58] Under Rule 16(b), Plaintiff as the movant has the burden of showing good cause.[59] Plaintiff offers no explanation as to why he failed to timely comply with his expert report deadline, even though he has known his original expert report deadline for over eight months, since the original Scheduling Order was docketed on March 15, 2019, and he knew his extended report deadline, November 11, 2019, for two and one-half weeks before providing the Revised Report.[60] Instead, Plaintiff simply attached the Revised Report to his opposition. As Defendants point out in their reply, Plaintiff "hopes to dodge his obligation to meet this 'good cause' standard by slipping a new expert report in as an exhibit to his opposition memorandum," but "[t]his sort of end run around the rules of civil procedure is inappropriate and is contrary to the Court's prior Order."[61]

The other Rule 16(b) factors likewise weigh against extending the deadline for providing the expert report. The importance of the Revised Report is low because, for the reasons explained below, even if the Court extended the deadline for producing the Revised Report, the report would be excluded for failure to comply with Federal Rule of Civil Procedure 26. Defendants would be prejudiced if the Revised Report were admitted. Finally, Plaintiff has had more than sufficient time to comply with the Court's Scheduling Order but has failed to do so. The complaint was filed on October 19, 2018[62] and the Scheduling Order setting the trial for February 10, 2020 was issued on March 15, 2019.[63]

---

[58] Fed. R. Civ. P. 16(b)(4).
[59] *S&W Enters. L.L.C., v. Southtrust Bank of Alabama, N.A.*, 315 F.3d 533, 536 (5th Cir. 2003).
[60] R. Doc. 11.
[61] R. Doc. 71 at 5.
[62] R. Doc. 2.
[63] R. Doc. 11.

A continuance is not justified in this case.

The Plaintiff has not met his burden of proof of showing good cause to extend his expert report deadline to November 27, 2019. The Revised Report is untimely. The Motion to Strike as to the reports is **GRANTED**.[64]

### B. The Revised Report is Stricken for Failure to Comply with Rule 26(a)(2)(B)

Even if the Court were to extend the deadline for Plaintiff to produce Dr. Haydel's report, the Revised Report would have to meet the requirements of Federal Rule of Civil Procedure 26.

1. Dr. Haydel's Revised Report includes the following opinions:[65]

    a. <u>Chronic Damage to Conjunctiva</u>:

- "At the time of my medical examination of Mr. Williams, it is my opinion that he was suffering from Chronic Damage to Conjunctiva";[66] and

- "[I]t is my opinion that it is more likely than not that Mr. Williams' diagnosis of chronic damage to conjunctiva is causally related to his exposure to oil and chemicals during the eighty days he worked as a clean-up worker."[67]

    b. <u>Chronic Rhinosinusitis</u>:

- "At the time of my medical examination of Mr. Williams, it is my opinion that he was suffering from Chronic Rhinosinusitis";[68] and

- "[I]t is my opinion that it is more likely than not that Mr. Williams' diagnosis of chronic damage to conjunctiva is

---

[64] Fed. R. Civ. P. 37(c)(1).
[65] In the Revised Report, Dr. Haydel makes clear he "erroneously" signed the bottom of the "Respiratory" portion of the Hvingelby Form finding a causal relationship between Plaintiff's exposure to oil and chemicals during his time as a clean-up worker and any respiratory conditions. R. Doc. 69-1 at ¶ 3. Accordingly, to the extent Defendants move to strike Dr. Haydel's report on the basis of his opinion concerning Plaintiff's respiratory condition, the motion is moot.
[66] R. Doc. 69-1 at ¶ 1.
[67] *Id.*
[68] *Id.* at ¶ 2.

causally related to his exposure to oil and chemicals during the time he worked as a clean-up worker."[69]

c. <u>Chronic Dermatitis at the Site of Contact</u>:

- "I diagnosed Mr. Williams with Chronic Dermatitis at the site contact (i.e. on both of his wrists, ankles and feet)";[70] and

- "[I]t is my opinion that it is more likely than not that Mr. Williams' diagnosis of chronic damage to conjunctiva is causally related to his exposure to oil and chemicals during the time he worked as a clean-up worker."[71]

2. Dr. Haydel states that each of his above opinions is based on:

a. Dr. Haydel's "physical examination" of Plaintiff, including:

i. With respect to Plaintiff's Chronic Damage to Conjunctive diagnosis, Dr. Haydel noted he observed "'Mild Redness' in his Conjunctiva and that his Surrounding Structures (including the upper and lower eyelids) were 'Pink.'";[72]

ii. With respect to Plaintiff's Chronic Rhinosinusitis diagnosis, Dr. Haydel noted he observed "drainage discharge, post nasal drip, nasal stuffiness as well as facial sinus pain, pressure and fullness. According to Mr. Williams, he had been experiencing those symptoms for more than 12 consecutive weeks after his exposure to oil and chemicals on May 30, 2010."[73] Dr. Haydel also noted he "performed a Fiberoptic evaluation."[74]; and

iii. With respect to Plaintiff's Chronic Dermatitis diagnosis, Dr. Haydel noted he "personally observed diffuse hives, wheals and erythematous patches, all of which are various raised, red and/or swollen areas of the skin – on both of his wrists, ankles and feet."[75]

b. The temporal aspect of Plaintiff's conditions, including:

i. With respect to Plaintiff's Chronic Damage to Conjunctive diagnosis, Dr. Haydel noted "Mr. Williams had not suffered

---

[69] *Id.*
[70] *Id.* at ¶ 4.
[71] *Id.*
[72] *Id.* at ¶ 1.
[73] *Id.* at ¶ 2.
[74] *Id.*
[75] *Id.* at ¶ 4.

from [Chronic Damage to Conjunctiva] at any time prior to his exposure to oil and chemicals, and then manifested symptomology shortly after his exposure";[76]

    ii. With respect to Plaintiff's Chronic Rhinosinusitis diagnosis, Dr. Haydel noted "Mr. Williams had not suffered from [Chronic Rhinosinusitis] at any time prior to his exposure to oil and chemicals, and then manifested symptomology shortly after his exposure";[77] and

    iii. With respect to Plaintiff's Chronic Dermatitis diagnosis, Dr. Haydel noted "Mr. Williams had not suffered from [Chronic Dermatitis] at any time prior to his exposure to oil and chemicals, and then manifested symptomology shortly after his exposure."[78]

c. Dr. Haydel's review of Plaintiff's "Work History," "Ocular History," "Sinus History," and "Dermatologic History," provided by Ms. Eva Henriette Hvingelby, the nurse practitioner who filled out Plaintiff's diagnoses form supplied by his lawyers;[79]

d. Dr. Haydel's "discussions" with Plaintiff;[80]

e. "[T]he length of time over which Mr. Williams experienced symptoms";[81] and

f. Dr. Haydel's "education, experience and training."[82]

There are numerous deficiencies in the proffered bases for Dr. Haydel's opinions.

First, in the Original Report, Dr. Haydel opined: "[i]t is my professional opinion that Mr. Williams' diagnoses could possibly be related to chemical exposure from the BP clean-up efforts."[83] However, in the Revised Report, Dr. Haydel changes his opinion. He states "it is my opinion that it is more likely than not that [each of Plaintiff's diagnoses

---

[76] *Id.* at ¶ 1.
[77] *Id.* at ¶ 2.
[78] *Id.* at ¶ 4.
[79] *Id.* at ¶¶ 1, 2, and 4
[80] *Id.*
[81] *Id.*
[82] *Id.*
[83] R. Doc. 47-3 at 3.

are] causally related to his exposure to oil and chemicals during the time he worked as a clean-up worker."[84] Dr. Haydel offers no explanation for this substantial change in the certainty of his opinion. This is particularly striking considering that Dr. Haydel's examination of Plaintiff was on July 17, 2014 and the Revised Report is dated November 27, 2019, and there is no indication Dr. Haydel has seen Plaintiff in the interim. Furthermore, Dr. Haydel makes no reference to any expert reports on general causation to support his opinion on causation.

Second, it is not clear how, when, or by whom the Hvingelby Form was filled out and how much of the information included was personally gathered by or confirmed by Dr. Haydel. Dr. Haydel's role in gathering the information reflected on the Hvingelby Form, and how thoroughly he reviewed the information, is further called into question by his erroneous signing of the respiratory portion of the form certifying that he finds "it to be more like than not that this diagnosis is causally related to the patient's direct exposure to chemicals during the BP clean-up work,"[85] when in fact there were no symptoms of any respiratory problems.[86] Defendants represent the form was filled out by a nurse practitioner, Hvingelby.[87] Plaintiff does not refute this characterization or clarify who filled out the form. Dr. Haydel admits the nurse practitioner filled out the vast majority of the form, stating she filled out the "Work History," "Ocular History," "Sinus History," and "Dermatologic History" sections of the form.[88]

Third, the "Work History" section of the Hvingelby Form simply states the dates during which Plaintiff worked as a clean-up worker during the oil spill and that his

---

[84] R. Doc. 69-1 at ¶¶ 1, 2, and 4.
[85] R. Doc. 47-4 at 6.
[86] *Id. See supra* fn. 65.
[87] R. Doc. 31-1 at 4 n. 13, 6.
[88] R. Doc. 69-1 at ¶¶ 1, 2, and 4.

"primary wor[k]" duties included "pulled in contaminated booms from the water and scooped up oil and tar balls by the shoreline in Venice, LA."[89] This section of the form covers only Plaintiff's work history during the eighty-day period he worked on the BP oil spill; it says nothing about work Plaintiff did before or after working on the BP recovery effort. Further, this section does not specify Plaintiff's other work duties during the oil spill, nor how much time he spent pulling in the booms as opposed to his other work duties.

Fourth, Dr. Haydel does not describe the content of his "discussions" with the Plaintiff, nor how these "discussions" informed Dr. Haydel's opinions.

Fifth, Although Dr. Haydel states he bases his opinions in part on "the length of time over which Mr. Williams experienced symptoms," he fails to specify that exact length of time for all three conditions. The Hvingelby Form only specifies that Plaintiff reported his sinus symptoms have "persisted for longer than 12 consecutive weeks."[90] With respect to Plaintiff's ocular and dermatologic symptoms, the report specifies when Plaintiff began experiencing these symptoms but does not specify the period of time over which Plaintiff's ocular and dermatologic symptoms persisted. Similarly, Dr. Haydel bases his diagnoses in part on the fact that Plaintiff "had not suffered from [each condition] at any time prior to his exposure to oil and chemicals, and then manifested symptomology shortly after his exposure."[91] This information is not in the Hvingelby Form and Dr. Haydel does not disclose where he obtained it. Rather, Dr. Haydel acknowledges he did not "review any medical records concerning any prior medical treatment which Mr. Williams may have received," and has not "reviewed any subsequent medical records for any medical

---

[89] R. Doc. 47-4 at 2.
[90] *Id*. at 4.
[91] R. Doc. 69-1 at ¶¶ 1, 2, and 4.

treatment Mr. Williams may have received."[92]

Sixth, Dr. Haydel states he bases his opinions in part on his "education, experience and training."[93] Dr. Haydel did his residency in Family Practice and from 1998 to the present he has had a private family practice in Houma.[94] Dr. Haydel has not listed any specialized training in diagnosing or treating injuries caused by exposure to oil and chemicals. Neither does Dr. Haydel cite expert reports or any medical literature in support of his opinions.

The Court finds the Revised Report fails to identify the "basis and reasons" for Dr. Haydel's opinions, as required by Rule 26(a)(2)(B)(i), because it fails to explain the "how" and "why" of Dr. Haydel's opinions with any specificity.[95] As discussed above, the Revised Report does not supply any of the requisite information Dr. Haydel would need to determine whether Plaintiff's exposure caused his conditions, such as: the specific substances to which Plaintiff was exposed; the concentration of the products to which Plaintiff was exposed; the frequency and duration of Plaintiff's exposure to the substances; Plaintiff's complete work history and whether Plaintiff was exposed to toxic substances in any other contexts before or after the BP incident; and Plaintiff's medical history. In the Original Report, Dr. Haydel merely states Plaintiff experienced "chemical exposure."[96] In the Revised Report, Dr. Haydel states Plaintiff's conditions were caused by his "exposure to oil and chemicals."[97] The Hvingelby Form likewise does not specify

---

[92] *Id.* at 4.
[93] *Id.* at ¶¶ 1, 2, and 4.
[94] R. Doc. 47-3 at 5.
[95] *Fulmer*, 2019 WL 1989233 at *3 (citing *Sylla-Sawdon*, 47 F.3d at 284; *Denley*, 2008 WL 2951926 at *4-5; *Reed*, 165 F.R.D at 430).
[96] R. Doc. 47-3 at 3.
[97] R. Doc. 69-1 at ¶¶ 1, 2, and 4.

the chemicals to which Plaintiff was allegedly exposed.[98] Neither does the Hvingelby Form supply information concerning the concentration of the products, the frequency of the exposure, or the duration of the exposure. Dr. Haydel provides only conclusory reasons for his opinions, which are insufficient under Rule 26(a)(2)(B).[99]

The Revised Report fails to comply with Rule 26(a)(2)(B). The Motion to Strike the Revised Report also is granted for this reason.[100]

### C. Dr. Haydel's Testimony is Inadmissible Under Rule 702

Defendants contest whether general and specific causation has been or must be proven in this case. "'General causation is whether a substance is capable of causing a particular injury or condition in the general population.'"[101,102] While the Court does not know what the outcome of a *Daubert* hearing on general causation would be, it is clear Plaintiffs must prove, at minimum, that exposure to a certain level of a certain substance for a certain period of time can cause a particular condition in the general population.[103,104] Even if the Court considers general causation proven for purposes of deciding the instant motions, Plaintiff has the burden to prove specific causation.

---

[98] R. Doc. 47-4. The Hvingelby Form states Plaintiff "had direct contact with water contaminated with toxins," *id*. at 3, that Plaintiff "noted strong and smelly fumes were inhaled," *id*. at 6, and that Plaintiff "sustained direct skin contact with water contaminated with oil," *id*. at 8.

[99] The Revised Report fails to comply with Rule 26(a)(2)(B) for another reason. Rule 26(a)(2)(B)(vi) requires an expert report contain "a statement of the compensation to be paid for the study and testimony in the case." Dr. Haydel's original report contains a receipt for the payment he received for the original report. However, the Original Report does not contain a statement of Dr. Haydel's compensation to be paid for his testimony. Further, the Revised Report does not contain a statement of Dr. Haydel's compensation for the revised report.

[100] Fed. R. Civ. P. 37(c)(1).

[101] *Knight*, 482 F.3d at 351 (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 714 (Tex. 1997)).

[102] A hearing on *Daubert* motions with respect to general causation in this case was scheduled for January 2020. R. Doc. 30 at 4.

[103] *See, e.g.*, *Knight*, 482 F.3d at 351.

[104] Ordinarily, one would expect the expert report on specific causation to reference the expert report on general causation. Neither the Original Report nor the Revised Report mentions any of the expert reports on general causation.

"'[S]pecific causation is whether a substance caused a particular individual's injury.'"[105] Plaintiff must prove, at minimum, that he personally experienced a level of exposure to a certain substance over a certain period of time that caused his particular conditions consisting of chronic damage to conjunctiva, chronic rhinosinusitis, and chronic contact dermatitis at the site of contact.

To prove specific causation, Plaintiff "must rely on expert testimony to prove his medical diagnosis and causation."[106] Plaintiff has disclosed no expert to testify regarding his medical diagnoses and causation of his injuries other than Dr. Haydel.[107] The Court has already ruled that Dr. Haydel's Revised Report fails to comply with Rule 26(a)(2)(B).[108] For the reasons that follow, Dr. Haydel's testimony must be excluded under Federal Rule of Evidence 702.

### 1. Rule 702

Although neither party raises it in their pleadings, Federal Rule of Evidence 702 supplies the reason for excluding Dr. Haydel's testimony. Under Rule 702, an expert's testimony is inadmissible if it is not reliable.[109] Pursuant to *Daubert*, "[t]he reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia."[110]

---

[105] *Knight,* 482 F.3d at 351 (quoting *Havner*, 953 S.W.2d at 714).
[106] *Banegas v. BP Expl. & Prod., Inc.*, Civil Action No. 17-7429, 2019 WL 424683, at *2 (E.D. La. Feb. 4, 2019) (citing *Seaman v. Seacor Marine LLC*, 326 F. App'x 721, 723 (5th Cir. 2009) (noting that expert testimony is required to establish causation); *United States v. Crinel*, No. 15-61, 2016 WL 6441249, at *7 (E.D. La. Nov. 1, 2016) ("[A]n opinion regarding a patient's medical diagnoses or prognoses 'falls within the scope of expert testimony under [Federal Rule of Evidence] 702'") (quoting *Barnes v. BTN, Inc.*, 2013 WL 1194753, at *2 (S.D. Miss. Mar. 22, 2013), *aff'd*, 555 F. App'x 281 (5th Cir. 2014))).
[107] *See* R. Doc. 31-3 at 2-5.
[108] R. Doc. 35. The form completed by the nurse practitioner and signed by Dr. Haydel provides: "This examination does not create a formal patient-doctor relationship and shall not bind this physician or qualified medical provider in any way to provide continuity of care or ongoing treatment." R. Doc. 31-1 at 5.
[109] Fed. R. Evid. 702.
[110] *Seaman*, 326 F. App'x at 725 (citing *Knight*, 482 F.3d at 355).

"Where an expert's opinion is based on insufficient information, the analysis is unreliable."[111]

Plaintiff must prove through expert medical testimony that his conditions were caused by his exposure to oil and harmful substances during his response-related activities.[112] In a BELO case, "'[s]cientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain a plaintiff's burden in a toxic tort case.'"[113] "[I]nformation that is critical to proving causation" includes information "such as knowledge of what chemicals plaintiff was exposed to, the toxicological effect of those chemicals, [and] the degree of his exposure."[114]

In *Seaman*, a toxic tort case, the Fifth Circuit upheld a district court's exclusion of the plaintiff's sole causation expert's opinion under Rule 702 as "neither factually supported nor scientifically reliable."[115] The district court determined the expert's "assumption of regular exposure without any 'facts upon which [the expert] could have possibly surmised exposure levels, rendered her causation opinion mere guesswork."[116] Further, the expert failed to discuss "the studies on which her two cited journal articles were based."[117] In *Harriel*, the Southern District of Mississippi held a BELO plaintiff

---

[111] *Id.* (citing *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir.2009); *Knight*, 482 F.3d at 355 (stating that if the data relied on by a party's expert "fail[s] to provide a 'relevant' link with the facts at issue, his expert opinion was not based on 'good grounds'")).

[112] *See Banegas*, 2019 WL 424683 at *2; *Leija v. Penn Maritime, Inc.*, No. 06–10489, 2009 WL 211723, at *1 (E.D. La. Jan. 23, 2009) (holding expert "who is not a medical doctor, is not qualified to render a medical opinion as to whether workplace exposure to toxic substances more likely than not caused [the plaintiff's] cancer."); *Ballard v. Bunge N. Am., Inc.*, No. 07-343, 2008 WL 2185385, at *1 (E.D. La. May 22, 2008), *rev'd on other grounds*, 338 F. App'x 477 (5th Cir. 2009) (holding an expert who was "not a medical doctor" could not make a diagnosis of the plaintiff's ailment).

[113] *Harriel v. BP Expl. & Prod. Inc.*, No. 17-197, 2019 WL 2574118, at *3 (S.D. Miss. May 15, 2019) (quoting *Seaman*, 326 F. App'x at 723).

[114] *Banegas*, 2019 WL 424683 at *2 (citing *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 670 (5th Cir. 1999)).

[115] *Id.* at 726.

[116] *Id.* (internal quotation marks omitted).

[117] *Id.*

"failed in its burden to produce evidence on [the legal causation] element of his claim for which he bears the burden of proof at trial" because the plaintiff's medical expert "does not know the name of [the subject] chemical . . . [w]ithout knowing the chemical, he could not have stated . . . an adequate causation opinion in the medical records."[118] Even if a medical expert is aware of the specific chemicals to which a plaintiff was exposed, a plaintiff cannot establish specific causation through the medical expert's testimony if the medical expert "does not know the extent of [the plaintiff's exposure to [the chemical] or oil."[119]

Dr. Haydel appears to rely most heavily on his understanding that Plaintiff did not have any symptoms prior to his exposure and did have symptoms after his exposure. The Fifth Circuit has held that "temporal connection standing alone is entitled to little weight in determining causation."[120] Accordingly, the Fifth Circuit requires medical experts offering specific causation opinions to have "[s]cientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities."[121] In this case, Dr. Haydel, without knowing the type of chemical or the level, and duration of exposure, opines that each of Plaintiff's conditions is "more likely than not . . . causally related to his exposure to oil and chemicals" merely because Plaintiff did not suffer from these conditions "prior to his exposure" and he "manifested symptomology shortly after his exposure."[122] Such a temporal connection, standing alone, is insufficient to establish specific causation, and renders Dr. Haydel's opinion unreliable under Rule 702.

---

[118] *Harriel*, 2019 WL 2574118 at *4.
[119] *McGill v. BP Expl. & Prod. Inc.*, No. 18-159, 2019 WL 6053016, at *3–4 (S.D. Miss. Nov. 15, 2019).
[120] *Johnson v. Arkema, Inc.*, 685 F.3d 452, 467 (5th Cir. 2012) (citing *Curtis*, 174 F.3d at 670).
[121] *Seaman*, 326 F. App'x at 723 (citing *Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir.1996)).
[122] R. Doc. 69-1 at ¶¶ 1, 2, and 4.

The Court has outlined the many deficiencies in the Revised Report.[123] Even if the Revised Report were admitted, Dr. Haydel's testimony would be excluded under Rule 702 because it is based on insufficient evidence and, as a result, his conclusions are unreliable. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."[124]

The Motion to Strike Dr. Haydel's Testimony is **GRANTED**.

## III. Motion for Summary Judgment

### A. Law

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[125] "An issue is material if its resolution could affect the outcome of the action."[126] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[127] All reasonable inferences are drawn in favor of the non-moving party.[128] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[129]

---

[123] *Supra* pp. 12-15.

[124] *Kumho*, 526 U.S. at 157 (quoting *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997)) (quotation marks omitted).

[125] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[126] *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

[127] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).

[128] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[129] *Hibernia Nat. Bank v. Carner*, 997 F.2d 94, 98 (5th Cir. 1993) (citing *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147–48 (5th Cir. 1992)).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."[130] To satisfy Rule 56's burden of production, the moving party must do one of two things: "the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim" or "the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim."[131] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the non-moving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[132]

If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the non-movant's claim, or (2) affirmatively demonstrating that there is no evidence in the record to establish an essential element of the non-movant's claim.[133] If the movant fails to affirmatively show the absence of evidence in the record, its motion for summary judgment must be denied.[134] Thus, the non-moving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the

---

[130] *Celotex*, 477 U.S. at 323.
[131] *Id*. at 331.
[132] *Id*. at 322–24.
[133] *Id*. at 331–32 (Brennan, J., dissenting).
[134] *See id*. at 332.

record that was overlooked or ignored by the moving party."[135] "[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[136]

### B. Analysis

In this case, Defendants argue they are entitled to summary judgment because Plaintiff lacks an expert to testify regarding his medical diagnoses or causation.[137] To satisfy the elements of a valid BELO claims as set forth in the MSA, the BELO claimant must prove: (1) that he was correctly diagnosed with his alleged physical condition after April 16, 2012, and (2) that his condition was legally caused by his exposure to harmful substances released as a result of the oil spill.[138] As Judge Vance held in another BELO action, a BELO claimant "must rely on expert testimony to prove his medical diagnosis and causation."[139] When a plaintiff has no expert testimony to prove his medical diagnosis or causation at trial, the plaintiff's suit may be dismissed at the summary judgment stage.[140]

---

[135] *Id.* at 332–33. The burden would then shift back to the movant to demonstrate the inadequacy of the evidence relied upon by the non-movant. Once attacked, "the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)." *Id.* at 332–33, 333 n.3.

[136] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).

[137] R. Doc. 48-3 at 4-5.

[138] *Banegas*, 2019 WL 424683 at *2 (citing *Piacun v. BP Expl. & Prod., Inc.*, No. 15-2963, 2016 WL 7187946, at *4-5 (E.D. La. Dec. 12, 2016)).

[139] *Id.* (granting defendants' motion for summary judgment where BELO plaintiff "[b]ecause plaintiff cannot present competent evidence to prove his medical diagnosis or causation at trial.") (citations omitted).

[140] *Id.* at *3.

In this case, the Court has granted Defendants' motion to exclude at trial the Revised Report and testimony of Dr. Haydel, Plaintiff's only expert on medical diagnoses and causation. Because Plaintiff now lacks any expert to testify regarding his medical diagnoses and causation, Plaintiff will not be able to establish specific causation at trial. As a result, Defendants are entitled to summary judgment in their favor on all claims.

## **CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that Defendants' Motion to Strike[141] and Motion for Summary Judgment[142] are **GRANTED**. Judgment will be entered in favor of Defendants, BP Exploration & Production Inc. and BP America Production Company, and against Plaintiff Benjamin Williams.[143]

**New Orleans, Louisiana, this 5th day of December, 2019.**

*Susie Morgan*

_____

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[141] R. Doc. 47.
[142] R. Doc. 48.
[143] On November 6, 2019, Plaintiff filed a Motion for Partial Summary Judgment on the Issue of General Causation. R. Doc. 36. Accordingly, Plaintiff's Motion for Partial Summary Judgment is denied as moot.